# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 94-KP-00571-SCT

*ANDREW ALEXANDER a/k/a ANDREW LEE*
*ALEXANDER*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | JUNE 27, 1994 |
| TRIAL JUDGE: | HON. ELZY JONATHAN SMITH, JR. |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE MCCRORY |
| DISTRICT ATTORNEY | HONORABLE LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 2/6/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SULLIVAN, P.J., McRAE AND ROBERTS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

This is an appeal from an order denying leave to file an out-of-time appeal following an evidentiary hearing in the Circuit Court of Coahoma County, Mississippi. Andrew Alexander was convicted of manslaughter and sentenced to 20 years in the custody of the Mississippi Department of Corrections for the death of Linda Faye Primer, the mother of his children. Alexander alleges retained trial counsel, Cleve McDowell, failed to perfect an appeal on his behalf. Further, Alexander alleges McDowell provided ineffective assistance of counsel because McDowell represented the victim's mother in collecting insurance proceeds following the expiration of the appeal period. An evidentiary hearing was held June 27, 1994 to present evidence for and against the out-of-time appeal. Following

testimony, Circuit Court Judge Elzy J. Smith found Alexander's motion to be without merit and entered an order denying the motion for leave to file an out-of-time appeal.

Aggrieved by the disposition below, Alexander appeals, requesting review of the following issues:

**I. WHETHER THE TRIAL COURT ERRED IN DENYING ALEXANDER'S MOTION FOR AN OUT-OF-TIME APPEAL?**

**II. WHETHER A CONFLICT OF INTEREST EXISTED WHEN MCDOWELL REPRESENTED ALEXANDER IN THE CRIMINAL TRIAL AND ALSO REPRESENTED THE VICTIM'S MOTHER IN COLLECTING LIFE INSURANCE PROCEEDS FROM THE DEATH OF THE VICTIM THEREBY DENYING ALEXANDER EFFECTIVE ASSISTANCE OF COUNSEL?**

**III. WHETHER THE TRIAL COURT ERRED IN NOT APPOINTING COUNSEL TO REPRESENT ALEXANDER AT THE EVIDENTIARY HEARING?**

Andrew Alexander was arrested and indicted for the murder of Linda Faye Primer. Alexander is the father of the victim's children. Cleve McDowell, an attorney from Drew, Mississippi, was hired by Alexander and members of his family to serve as defense counsel. Due to the insufficiency of the indictment, Alexander could only be tried for manslaughter. On August 25, 1993, Alexander was convicted of manslaughter in the Circuit Court of Coahoma County. On September 2, 1993, Alexander was sentenced to 20 years in the custody of the Mississippi Department of Corrections. Alexander's motion for a new trial was overruled on October 13, 1993, thus entering final judgment.

Linda Faye Primer had owned an insurance policy, which named Alexander as a beneficiary and Primer's mother, Mary Primer, as the contingent beneficiary. Because Alexander had been convicted for the death of Linda Faye Primer, the Mutual Savings Life Insurance Company refused to pay the proceeds to Alexander. On November 19, 1993, Mary Primer approached McDowell in regard to collecting the insurance benefits for Primer's children. On December 2, 1993, Alexander authorized the insurance company to release all benefits to Mary Primer and directed the proceeds check be written to both Mary Primer and McDowell. A portion of the proceeds was deposited by McDowell into a trust fund in the name of Alexander at the Department of Corrections. The remainder of the proceeds was disbursed to Mary Primer for the care of the victim's children, less $100 paid to McDowell.

On December 13, 1993, two months after final judgment and one month after a timely appeal could have been filed, Alexander, *pro se*, filed a motion for leave to file an out-of-time appeal. Alexander alleged he had notified McDowell of his desire to appeal the conviction, but through no fault of his own, a timely appeal had not been filed. Further, Alexander alleged he had notified McDowell that he could not afford $3,000 to appeal, and that McDowell did not inform the court of Alexander's indigent status, nor did McDowell inform Alexander of his right to a court-appointed attorney.

McDowell twice responded in circuit court to the allegations of Alexander. Also, Calunda Alexander and Mary Primer filed affidavits in regard to Alexander's allegations. Judge Elzy J. Smith ordered an evidentiary hearing be held.

The evidentiary hearing was held June 27, 1994, with witnesses giving testimony. Alexander asked for the court to appoint counsel for the evidentiary hearing. The court denied the request and commented Alexander had done very well in handling the motions thus far. Cleve McDowell was called upon to testify by the State.

McDowell stated he had been retained by Alexander and members of his family to serve as defense counsel around June 1993. The agreement included a $5,000 fee, which was paid $500 initially and various amounts thereafter. He explained the indictment was deficient to support a murder charge, thus reducing the highest possible crime to manslaughter. McDowell stated he and Alexander had discussed an appeal of his conviction and he had recommended Alexander not appeal the conviction because if Alexander were re-tried, Alexander could be found guilty of murder and receive a greater sentence. In response, Alexander stated he would take it into consideration and would tell McDowell what he decided. McDowell testified Alexander was to make the decision regarding the appeal and instruct McDowell accordingly. McDowell and Alexander discussed the possibility of appealing *pro se*, as the court would probably either appoint counsel for Alexander or require McDowell to continue to represent the defendant but with the county paying for the transcript and court costs. McDowell stated he explained the expenses of an appeal, including court fees, transcript cost, and the legal fee, would total about $3,000. In turn, Alexander indicated that if he wished to appeal, someone from his family would take some money to McDowell, but Alexander did not want a court appointed attorney.

Because nobody from Alexander's family or Alexander himself contacted McDowell, McDowell believed Alexander did not want to appeal the conviction. McDowell stated he and Alexander stayed in constant communication personally or indirectly, primarily through Alexander's wife, Calunda Alexander. On at least one occasion, Alexander called McDowell collect at home. McDowell stated he last spoke to Alexander one week prior to the running of the 30 day appeal period. During that conversation, McDowell told Alexander he must decide if he wanted to appeal and either furnish money to McDowell to cover court costs and transcripts or instruct McDowell to inform the court of his wish to appeal *pro se*. McDowell stated he had personally informed Alexander of the deadline to appeal several times, as well as informing Alexander's wife of the deadline. McDowell stated that Alexander never affirmatively said he did not wish to appeal. However, neither did Alexander state that he did wish to appeal. McDowell and Alexander also discussed the situation involving Alexander filing *in forma pauperis*. McDowell warned Alexander if he did file *in forma pauperis*, the court would probably not let him post a bond, thus leaving Alexander in jail. McDowell stated Alexander never informed him that he could not pay for the appeal but wanted to appeal anyhow.

McDowell next answered questions regarding the alleged conflict of interest involving Mary Primer and other members of the Primer family and the representation of Alexander. McDowell stated the victim had children fathered by Alexander. McDowell stated he was not representing Mary Primer in any manner during the Alexander representation. Prior to accepting the Alexander defense, McDowell informed Alexander he had represented other members of the Primer family in the past, but he would professionally represent Alexander and not be biased because of the prior representations. Alexander chose to retain McDowell. McDowell stated he handled the representation professionally and was not biased against Alexander. McDowell had no communications during the trial with Mary Primer. It was not until the hearing for a motion for a new trial that McDowell and Mary Primer spoke, and those conversations were in regard to her doubt as

to Alexander's guilt. McDowell stated that on November 19, 1993, Mary Primer asked McDowell to intercede and help her to obtain the proceeds from a life insurance policy that had been owned by her daughter, for the benefit of Alexander and the victim's children. Mary Primer had brought a letter from the insurance company dated November 14, 1993, which disputed the life insurance coverage. A copy of this letter was not designated as part of the record. McDowell stated his understanding was Mary Primer and Alexander's wife had discussed the insurance policy, and Alexander intended to sign a release, as the insurance company wanted, to allow the insurance company to release the money to Mary Primer. McDowell stated he had not discussed the insurance matter with Mary Primer prior to November 14, 1993. McDowell wrote to Alexander in prison, informing him the proceeds could be obtained if Alexander were to sign the release, and a portion of the money would be sent to Mary Primer for the children's care, and a portion would be reserved for Alexander. If Alexander agreed with the release, he was to sign and return the release. The release authorized the insurance company to release the insurance proceeds to Mary Primer and to make the check payable to Mary Primer and McDowell. The insurance check was to be made payable to McDowell and Mary Primer jointly so McDowell could protect Alexander's interest. McDowell stated that because Alexander was found guilty of killing Linda Faye Primer, Alexander could not receive any of the insurance proceeds as a beneficiary. McDowell identified Exhibit Number 3, which is a signed letter from Alexander directing McDowell to send Alexander's money to the bookkeeping department at Parchman, which is a standard procedure for depositing money for inmates in custody. Exhibits from the evidentiary hearing were not designated by Alexander into the record. The letter authorized McDowell to deduct $100 as a fee. McDowell stated he complied with the instructions.

Alexander was allowed to cross-examine McDowell. McDowell reiterated Alexander did not expressly state he did not wish to appeal, merely Alexander never stated he did want to appeal. Alexander restated he had wanted appointed counsel for the evidentiary hearing and then stated he had no further questions for McDowell.

Judge Smith then posed questions to McDowell. McDowell stated he had informed Alexander before the deadline for filing an appeal that if he did not have money to pay McDowell to file the appeal or to pay for the transcript, he could apply to the court and likely receive a free transcript from the court. Further, McDowell stated he believed Alexander had understood those discussions. McDowell stated he believed Alexander was familiar with criminal proceedings because Alexander was employed as a guard at the Department of Corrections and because McDowell had represented Alexander on federal criminal charges upon which Alexander was convicted and served time in federal prison. McDowell stated he had interviewed Alexander in jail, and Alexander called McDowell collect at his home just before the expiration of the appeal deadline. McDowell stated Alexander wavered on his desire to appeal.

On re-direct by the State, McDowell stated he believed Alexander understood the discussion regarding the right to appeal and the court paying for the transcript. McDowell stated, "His concern was that if he had the court pay for the transcript he would have to stay in jail and could not make bond. That -- that was primarily why I understood he wanted to pay his own way, so he would be eligible to make bond and get out, pending the appeal." McDowell was asked if Alexander ever indicated he was unable to afford the costs of the appeal. McDowell stated, "I discussed that fully with he and with members of his family, and they up to the end says that, you know, if he wanted to appeal, they would bring the money, and the money never came. That was fully discussed. He and

members of his family said to the very last that, 'If I want to appeal, I'll bring the money,' and the money never came either for the transcript or for legal fees." McDowell was dismissed as a witness.

Alexander again stated he needed legal counsel. The court responded it would not appoint counsel for Alexander. Alexander was asked if he wished to offer witnesses and testimony in support of his position.

Alexander stated he never told McDowell he did not want to appeal. Further, Alexander stated McDowell never explained *in forma pauperis*, or how the court could appoint an attorney. Also, Alexander testified he was not informed he could make partial payments to McDowell for the appeal and that there was no contact or communication between Alexander and McDowell following the hearing for a new trial. Judge Smith asked Alexander if he had filed motions with the court claiming to be totally without funds and if he had received any proceeds from the insurance company. Alexander replied he did not have any funds other than the insurance proceeds in a trust fund in his name. Judge Smith reviewed the court file and Alexander continuously affirmed he was without funds. Alexander was dismissed as a witness.

Alexander stated he had subpoenaed two witnesses, Mary Primer and Calunda Alexander. Calunda Alexander was not present at the evidentiary hearing. Judge Smith accepted Calunda Alexander's affidavit as testimony. Mary Primer stated she was the mother of Linda Faye Primer, and she did testify at Alexander's hearing on the motion for a new trial. Mary Primer testified she had taken the letter from the insurance company to McDowell two or three days after she received it in November 1993, because an insurance company representative had told her the insurance company would not pay on the policy. A copy of the letter from the insurance company is not included in the record before this Court. Mary Primer stated she first discussed the insurance matter with McDowell on November 19, 1993, and she had not seen or communicated with McDowell any time before in regard to the insurance matter. Mary Primer testified when she went to see McDowell, Alexander was already in prison. Alexander did not have any questions for Mary Primer.

Judge Smith indicated Mary Primer's affidavit was allowed into testimony. Mary Primer's affidavit stated she is the mother of Linda Faye Primer who was killed, and that Alexander was convicted of the killing. Her affidavit states she was a co-beneficiary of her daughter's life insurance policy with Alexander; she hired McDowell to handle the insurance claim and she knew McDowell represented Alexander in the criminal trial.

In her affidavit, Calunda Alexander stated she is the wife of Andrew Alexander. She stated Alexander informed McDowell he wanted to appeal but did not have money to pay for the appeal, and that McDowell never advised Alexander the court would appoint legal counsel for the appeal if Alexander could not afford the appeal. Calunda stated at no time did she and her husband discuss waiving the appeal to be in their best interest. Further, Calunda stated McDowell "was representing the deceased's interest in an insurance claim at the same time that he was representing Andrew Alexander in his criminal case."

At the close of testimony, Judge Smith found the motion for an out-of-time appeal to be without merit. Judge Smith stated at the sentencing hearing he had made the statement in the presence of Alexander that counsel would be required to stay on regardless of any retained or employment status. Judge Smith stated the testimony bore that McDowell was prepared to proceed with the appeal, and

the defendant, Alexander is very knowledgeable of trial procedures. The court pointed out that just a few days before filing his motion for an out-of-time appeal claiming he was an indigent, Alexander had already made arrangements at that time to get part of the insurance proceeds from the victim life.

On June 27, 1994, Circuit Court Judge Elzy Smith entered the order denying Alexander's motion for leave to file an out-of-time appeal. Judge Smith found:

> This cause having come on for hearing on the Motion of the defendant for post-conviction relief, including a request for leave to file an out-of-time appeal, and the Court, having heard and considered the motion and the proof, both for the State of Mississippi and for the Defendant/Petitioner, and the arguments both for and against the relief sought, finds that the attorney for the defendant, Honorable Cleve McDowell, at any time while this cause was properly before this Court and prior to the expiration of the time for perfecting an appeal, never had a conflict of interest which would in any way compromise his representation of the defendant; that the failure of said attorney to appeal timely on behalf of the defendant was solely attributable to the defendant for his failure to notify said attorney he desired to appeal after having been properly advised of all of his rights in relation thereto in a timely manner; and that the Motion is not well taken and should be denied.

## DISCUSSION OF THE ISSUES

This Court will review an appeal from a denial of post-conviction relief after an evidentiary hearing on the matter using the clearly erroneous standard of review. *Reynolds v. State*, 521 So. 2d 914, 918 (Miss. 1988); *Merritt v. State*, 517 So. 2d 517, 520 (Miss. 1987). "Put otherwise, we will not vacate such a finding unless, although there is evidence to support it, we are on the entire evidence left with the definite and firm conviction that a mistake has been made." *Id*.

### I. WHETHER THE TRIAL COURT ERRED IN DENYING ALEXANDER'S MOTION FOR AN OUT-OF-TIME APPEAL?

Following a long line of Mississippi law, Alexander was required to prove at the evidentiary hearing by a preponderance of the evidence that, within the time for giving notice of appeal, he asked his attorney to appeal and his attorney, through no fault of Alexander, failed to perfect an appeal. Miss. Code Ann. § 99-39-23(7) (Supp. 1990); *Fair v. State*, 571 So. 2d 965 (Miss. 1990); *Barnett v. State*, 497 So. 2d 443 (Miss. 1986); *Wilson v. State*, 426 So. 2d 792 (Miss. 1983); *Jones v. State*; 355 So. 2d 89 (Miss. 1978).

In the order denying leave to file an out-of-time appeal, the circuit court found the failure to perfect an appeal "was solely attributable to the defendant for his failure to notify said attorney that he desired to appeal after having been properly advised of all of his rights in relation thereto in a timely manner." Alexander alleged he wanted and requested an appeal by informing his attorney, McDowell.

However, McDowell repeatedly stated Alexander was unsure if he wanted to appeal and never did state he wished to appeal. McDowell testified he and Alexander discussed filing an appeal, filing the appeal *in forma pauperis*, and paying McDowell to file the appeal. Alexander was concerned he would not be allowed to post bond pending the appeal if he appealed *in forma pauperis*. McDowell testified he was informed by Alexander and Alexander's wife that if Alexander wished to appeal Alexander and his family would give McDowell some money to file the appeal. This left McDowell waiting to hear from Alexander or his family. Further, McDowell testified Alexander never stated he was indigent or without funds to pay the costs of the appeal. Just a week before the expiration of the period to file an appeal, McDowell again spoke with Alexander regarding the appeal, however, Alexander did not express a desire to appeal.

Alexander alleged he was not informed of his right to appeal *in forma pauperis* and that the court would probably pay the costs of his appeal. However, Judge Smith directly refuted this allegation. Judge Smith stated that, at the sentencing of Alexander, the court announced McDowell was required to continue to represent Alexander. Judge Smith stated he makes those announcements at the sentencing for the benefit of the convicted defendant, to inform the defendant of his right to appeal and his right to be represented by trial counsel during the appeal.

The lower court considered the evidence presented and properly denied the motion for leave to file an out-of-time appeal.

### II. WHETHER A CONFLICT OF INTEREST EXISTED WHEN MCDOWELL REPRESENTED ALEXANDER IN THE CRIMINAL TRIAL AND ALSO REPRESENTED THE VICTIM'S MOTHER IN COLLECTING LIFE INSURANCE PROCEEDS FROM THE DEATH OF THE VICTIM THEREBY DENYING ALEXANDER EFFECTIVE ASSISTANCE OF COUNSEL?

"Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial ..." ***Cuyler v. Sullivan***, 446 U.S. 335, 346-47 (1989). When defense counsel has breached his duty of loyalty by actively representing conflicting interests and the conflict of interest adversely affects his performance, then prejudice is presumed. ***Vielee v. State***, 653 So. 2d 920, 921 (Miss. 1995); ***Cuyler***, 446 U.S. at 348-50. *See also* ***Strickland v. Washington***, 466 U.S. 668, 692 (1984).

Alexander contends the assistance of McDowell at the criminal trial was ineffective due to the conflict of interest of representing Alexander in the killing of Linda Faye Primer and also representing Mary Primer and Alexander in collecting the insurance proceeds from Mutual Savings Life Insurance Company. Alexander was convicted of manslaughter on August 25, 1993, and sentenced to twenty (20) years imprisonment on September 2, 1993; Alexander's motion for a new trial was overruled following a hearing on October 13, 1993. Upon the disposition of all trial motions on October 13, 1993, final judgment had been entered, thus commencing the thirty (30) day period in which to perfect an appeal, if desired. The period in which to perfect an appeal expired November 13, 1993.

The evidentiary hearing testimony of Mary Primer and Cleve McDowell show there was no communication regarding the insurance policy until November 19, 1993, after the expiration of the appeal period. Clearly, no conflict existed during the period of the criminal trial or the subsequent appeal period. Mutual Savings Life Insurance Company had sent Mary Primer a letter dated

November 14, 1993, which she took to McDowell on November 19, 1993. However this letter and the other exhibits from the evidentiary hearing were not designated as part of the record by Alexander for this Court to consider. When this Court is asked to determine whether a particular ruling on a motion was correct, it is incumbent upon the movant to make a full and complete record for this Court to review in making its decision. *Turner v. State*, 415 So. 2d 689, 691 (Miss. 1982). It is an appellant's duty to justify his arguments of error with a proper record, which does not include mere assertions in his brief, or the trial court will be considered correct. *Smith v. State*, 572 So. 2d 847, 849 (Miss. 1990). Alexander only offers as evidence his assertions and the affidavit statement of his wife that she had personal knowledge of McDowell representing Mary Primer in the insurance claim and Alexander in the criminal suit simultaneously.

Assuming *arguendo* that the representation of Mary Primer in the insurance claim did create a conflict, it did not arise until after the period to appeal had expired. Further, Alexander claims the collection of insurance benefits for his children through Mary Primer was a conflict to his criminal representation; however, Alexander ignores he received a portion of the insurance benefits. It was by agreement between Alexander and Mary Primer the release was effectuated and the insurance proceeds released for the care of his children. McDowell testified he was approached by Mary Primer, who indicated she had reached agreement with Alexander for him to sign the release and she would give him part of the insurance proceeds, in return There is plentiful evidence to support the lower court and crush the allegation of conflicting interest, thus this issue is without merit.

### III. WHETHER THE TRIAL COURT ERRED IN NOT APPOINTING COUNSEL TO REPRESENT ALEXANDER AT THE EVIDENTIARY HEARING?

If an evidentiary hearing is required, the judge may appoint counsel for a petitioner who qualifies for the appointment of counsel. Miss. Code Ann. § 99-39-23 (1). A criminal defendant has neither a state or federal constitutional right to appointed counsel in post-conviction proceedings. *Moore v. State*, 587 So. 2d 1193, 1195 (Miss. 1991); *citing* *Pennsylvania v. Finley*, 481 U.S. 551 (1987).

The appointment of counsel in an indigent for an evidentiary hearing is within the discretion of the judge. Judge Smith expressed his doubts as to whether Alexander was indeed indigent because of the trust account containing an unidentified amount of the insurance proceeds from the life insurance of his victim. The lower court properly declined to appoint counsel for Alexander.

### CONCLUSION

Alexander alleged the failure to timely appeal his manslaughter conviction was due to the fault of his counsel, Cleve McDowell. An evidentiary hearing was properly ordered. Witnesses were allowed to testify and present evidence. Judge Smith found the failure to timely appeal was due solely to the fault of Alexander, and McDowell was free from any conflicting interests.

Upon review of the record, sufficient evidence supports the lower court's findings. The failure of McDowell to file an appeal on behalf of Alexander was solely attributable to Alexander's failure to inform McDowell he wished to appeal. The representation Alexander alleges created a conflict of interest and caused McDowell to allegedly give ineffective assistance did not occur until after the criminal trial and the subsequent period to file an appeal. Finally, Alexander contends the trial judge committed error by not appointing counsel for Alexander for the evidentiary hearing. Miss. Code Ann

§ 99-39-23 (1) states a judge may appoint counsel for a petitioner at a evidentiary hearing. Therefore, this matter was within the discretion of the judge and no error is found.

**LOWER COURT'S DENIAL OF POST CONVICTION RELIEF AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, McRAE, SMITH AND MILLS, JJ., CONCUR. BANKS, J., CONCURS IN RESULT ONLY.**